IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

James M. Gregg,                    :

          Plaintiff,               :

     v.                            :     Case No. 2:07-cv-1213

                                   :

Ohio Department of
Youth Services, et al.,            :     Magistrate Judge Kemp

          Defendants.              :

OPINION AND ORDER

     Plaintiff James M. Gregg brought this civil rights action
pursuant to 42 U.S.C. §1983.  The case involves an incident that
took place on November 27, 2006, at the Ohio River Valley
Juvenile Correctional Facility located in Franklin Furnace, Ohio.
Mr. Gregg's first amended complaint alleges that the defendants,
all of whom are employed by the Ohio Department of Youth Services
in some capacity, are legally responsible for injuries he
received at the hands of Juvenile Corrections Officers (JCOs) on
that date.

     On June 12, 2009, the defendants filed a motion for summary
judgment.  Mr. Gregg then moved for leave to amend his complaint
to conform his claim against defendant Slusher to the evidence.
The defendants have also filed a motion in limine contesting the
admissibility of some of the evidence relied on by Mr. Gregg in
opposing their motion for summary judgment.  Each of these
motions is fully briefed.  For the following reasons, the motion
for leave to amend will be granted, the motion in limine will be
denied, and the motion for summary judgment will be granted in
part and denied in part.

     I.  The Facts (as Alleged by Mr. Gregg)

     In November 2006, Mr. Gregg, then a juvenile, was living at

ORVJCF, a DYS facility.  At approximately 8:00 p.m. on the evening of November 27, Mr. Gregg was in the "medline" waiting for medication.  After receiving his medication, he rejoined the line.  At some point, he stepped out of this line to speak to JCO Slusher, one of the named defendants.  JCO Rogers, another defendant, ordered Mr. Gregg to get back in line.  When Mr. Gregg did not, Officer Rogers used physical force against him, and some type of altercation began.  At some point during the altercation, a radio call went out and staff from throughout the facility arrived to offer assistance.

Defendant Derifield, another JCO, was the first staff person to arrive on the scene.  He helped Officer Rogers restrain Mr. Gregg.  By that time, Officer Slusher had ordered the juveniles in the area to the ground but he did not intervene either to help or to restrain Mr. Gregg.  Defendant Lindamood arrived just as Mr. Gregg was finally subdued and ordered that he be handcuffed and escorted back to his unit.  Mr. Gregg was cuffed behind his back and led away toward his housing unit.

Defendant Kirby Lawson was one of at least two JCOs who escorted Mr. Gregg back to the unit.  According to Mr. Gregg, as they were walking back to the unit, Officer Lawson lifted him by his head and neck and threw him on his back onto the ground.  The amended complaint alleges that defendants Randall Crank and Joshua Barnard were somewhere in the area when this second assault allegedly occurred.

As the result of the use of force, Mr. Gregg sustained red marks to his face and neck and a black eye.  These injuries were documented later that evening by the facility's medical staff.  The next morning, Mr. Gregg discovered a large red blood spot in his left eye.  He was taken off grounds to the emergency room at the Southern Ohio Medical Center for diagnosis and received treatment for a hematoma.  Since his release from ODYS custody,

Mr. Gregg has not sought additional treatment, but he continues to suffer from anxiety attacks which increased in frequency after the use of force.  All of the pending motions will be decided against this basic factual backdrop.

## II.  The Motion to Amend the Complaint

Mr. Gregg has moved for leave to file a second amended complaint.  The proposed amendment changes only Mr. Gregg's claims against Officer Slusher.  Both the original and first amended complaints allege that Officer Slusher participated in one of the assaults on Mr. Gregg.  However, in their depositions, Officers Rogers and Slusher both testified that Officer Slusher did not participate in the alleged assaults.  The second amended complaint asserts that Officer Slusher failed to intervene when Mr. Gregg was physically assaulted by JCO Rogers.   Mr. Gregg argues that the proposed amendment would merely conform his complaint to the evidence in this case and should therefore be allowed under Fed.R.Civ.P. 15(b).

The defendants oppose this motion because, in their view, Mr. Gregg has not shown good cause for filing his motion only after they moved for summary judgment.  They point out that Officer Slusher's deposition was taken three months before the July 11, 2008 deadline for amending the pleadings, and argue that he could have made this motion much earlier.  They also argue that Officer Slusher will be prejudiced by this amendment because he would otherwise be entitled to summary judgment on the use of force claim.  The defendants also assert that Rule 15(b), which deals with amendments to conform to the evidence, is not applicable because this matter has yet to go to trial.

Rule 15(b) clearly does not apply here.  Not only does this subsection contemplate that the amendment of pleadings to conform to the evidence take place during or after a trial, it also requires that the issue not previously raised in the pleadings

must have been tried with the parties' express or implied
consent.  Here, neither of these conditions is satisfied.  The
motion will therefore be considered under Fed.R.Civ.P. 15(a).

Rule 15(a), however, cannot be read in isolation.  Rather,
as the Court of Appeals recently pointed out in <u>Leary v.
Daeschner</u>, 349 F.3d 888 (6th Cir. 2003), Rules 15(a) and 16(b)
must be read together when a motion for leave to amend is made
after the deadline established in a Rule 16 order for moving to
amend the pleadings.  Consequently, the Court is permitted to
examine the standard factors governing amendments of the
complaints under Rule 15(a) only if it is satisfied that good
cause exists for the late filing.

The Court is persuaded that Mr. Gregg has established good
cause for extending the deadline for amending his complaint.
Although it is true that Officer Slusher denied participating in
the alleged assault at his April 10, 2008 deposition, Mr. Gregg
was not required, at that point, to accept that testimony as
true.  At his own deposition on February 18, 2009, Mr. Gregg
testified that he still believed that Officer Slusher had
assisted Officer Rogers in subduing him.  It was not until
Officer Rogers' deposition on April 14, 2009, that he realized
that it was Officer Derifield, and not Officer Slusher, who
helped to restrain him.  By then, the deadline to amend his
complaint had long passed.  Thus, the question becomes whether
Rule 15(a) permits this amendment. The United States Court of
Appeals for the Sixth Circuit has spoken extensively on the
standard for granting leave to amend under Rule 15(a), relying
upon the decisions of the United States Supreme Court in <u>Foman v.
Davis</u>, 371 U.S. 178 (1962) and <u>Zenith Radio Corp. v. Hazeltine
Research, Inc.</u>, 401 U.S. 321 (1971), decisions which give
substantial meaning to the "when justice so requires."  In <u>Foman</u>,
the Court indicated that the rule is to be interpreted liberally,

and that in the absence of undue delay, bad faith, or dilatory motive on the part of the party proposing an amendment, leave should be granted. In Zenith Radio Corp., the Court indicated that mere delay, of itself, is not a reason to deny leave to amend, but delay coupled with demonstrable prejudice either to the interests of the opposing party or of the Court can justify such denial.

Expanding upon these decisions, the Court of Appeals has noted that:

> [i]n determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction.

Phelps v. McClellan, 30 F.3d 658, 662-63 (6th Cir. 1994) (citing Tokio Marine & Fire Insurance Co. v. Employers Insurance of Wausau, 786 F.2d 101, 103 (2d Cir. 1986)). See also Moore v. City of Paducah, 790 F.2d 557 (6th Cir. 1986); Tefft v. Seward, 689 F.2d 637 (6th Cir. 1982). Stated differently, deciding if any prejudice to the opposing party is "undue" requires the Court to focus on, among other things, whether an amendment at any stage of the litigation would make the case unduly complex and confusing, see Duchon v. Cajon Co., 791 F.2d 43 (6th Cir. 1986) (per curiam), and to ask if the defending party would have conducted the defense in a substantially different manner had the amendment been tendered previously. General Electric Co. v. Sargent and Lundy, 916 F.2d 1119, 1130 (6th Cir. 1990); see also Davis v. Therm-O-Disc, Inc., 791 F. Supp. 693 (N.D. Ohio 1992).

Here, there is no evidence of any undue delay, bad faith, or dilatory motive on the part of Mr. Gregg or his counsel. But even were the Court to find that he should have sought leave to

amend prior to the filing of the defendants' motion for summary judgment, mere delay is not a sufficient reason to deny a motion to amend. The defendants must couple this delay with a showing of prejudice in order to defeat the motion.

Here, amending the complaint to assert a different theory of liability against Officer Slusher will not require the defendants to expend significant additional resources and will not result in any serious disruption of this case. Such a claim is not really "new." Mr. Gregg previously asserted exactly the same type of claim against a number of the other defendants. Although the defendants argue that, without the amendment, Officer Slusher would have been granted summary judgment on the use fo force claim, that claim is being voluntarily dismissed, so his defense of that claim is not compromised. Lastly, this is not a case where the party seeking the amendment has repeatedly failed to cure deficiencies in his pleading, nor would permitting the amendment be an exercise in futility since the law recognizes this type of claim. See McHenry v. Chadwick, 896 F.2d 184 (6th Cir. 1990). Consequently, the Court will grant the motion.

### III. The Motion in Limine

Mr. Gregg relies on the Report of Investigation prepared by David A. Haynes to set out specific facts showing what he regards as several genuine issues for trial. He also relies to a lesser extent on the executive summary of the fact-finder's final report in S.H. v. Taft, case no. 2:04-cv-1206, as well as an ODYS standard operating procedure entitled "Response to Resistant Youth Behavior," and certain performance evaluations contained in defendant Lindamood's personnel file. The defendants argue that the Report of Investigation is filled with hearsay in addition to being hearsay itself. They also maintain that Mr. Gregg has failed to authenticate the Report of Investigation as well as the other exhibits. For these reasons, the defendants contend that

the Court must disregard each of these exhibits in ruling on
their summary judgment motion. In his memorandum contra
defendants' motion in limine, Mr. Gregg asserts that the Report
of Investigation is an official report of ODYS that is
specifically excepted from hearsay pursuant to and admissible
Fed.R.Evid. 803(8)(C). The memorandum contra does not address
the other exhibits, although Mr. Gregg does ask the Court
elsewhere to take judicial notice of the fact finder's final
report in S.H. v. Taft. See Memorandum in Opposition to
Defendants' Motion for Summary Judgment, p. 21. Mr. Gregg also
does not address the defendants' argument that he did not
properly authenticate the Report of Investigation.

Rule 803 of the Federal Rules of Evidence sets forth a
number of exceptions to the hearsay rule found in Rule 801. Rule
803(8) provides in relevant part that "in civil actions ... ,
factual findings resulting from an investigation made pursuant to
authority granted by law [are not excluded as hearsay], unless
the sources of information or other circumstances indicate lack
of trustworthiness." Fed.R.Evid. 803(8)(C). The term "factual
findings" encompasses factually based conclusions and opinions.
Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 162 (1988); United
States v. Garland, 991 F.2d 328, 334-35 (6th Cir. 1993).
Further, there is no requirement that the investigator charged
with making the "factual findings" have personal knowledge of the
incident; it is enough that the report "embody the results of
[his] investigation...." Combs v. Wilkinson, 315 F.3d 548, 555-
56 (6th Cir. 2002)(quoting 2 McCormick on Evidence §296 (5th ed.
1999)).

Mr. Gregg has established, and the defendants do not
dispute, that Mr. Haynes was authorized by applicable Ohio law to
conduct his investigation into the incidents which occurred at
ORVJCF on November 27, 2006. The investigation was conducted in

conformity with administrative regulations which require the
chief inspector for ODYS to "investigate and monitor practices
within the department of youth services to ensure that all laws
as well as rules, regulations and directives of the department
and subordinate facilities are being followed and applied fairly
throughout the system ..."  Ohio Admin. Code §5139-5-02(C)(3).
In performing that function, "the chief inspector shall have full
administrative powers and complete access at any time to all
facilities offices or installations under the jurisdiction of the
department of youth services."  Ohio Admin. Code §5139-5-02 (D).
Standard Operating Procedure No. 301.05.01, in conjunction with
the ODYS policy concerning the management of resistant youth
behavior, requires all instances of the use of physical response
to be investigated.  Such an investigation, at a minimum, must
include face-to-face interviews with all staff and youth
involved, review of any video tapes or photographs of the
incident, review of any documentation and an examination of any
physical evidence recovered.  Id.

        Because the investigation was made pursuant to authority
granted by law, the report is admissible unless the sources
relied on by Mr. Haynes or other circumstances indicate a lack of
trustworthiness.  The burden of demonstrating lack of
trustworthiness is on the party who opposes introduction of the
report.  See Garland, 991 F.2d at 335; Hickson Corp. v. Norfolk
S. Ry. Co., 124 Fed. App'x 336, 344 (6th Cir. 2005); see also
Advisory Committee Notes to Rule 803(8) ("rule assumes
admissibility in the first instance but with ample provision for
mistake if sufficient negative factors are present").  The
Advisory Committee suggested that, in determining whether a
report is trustworthy, a court should consider the following four
factors: (1) timeliness of the investigation; (2) the special
skill or experience of the investigator; (3) whether a hearing

was conducted; and (4) possible motivational problems.  See Baker v. Elcona Homes Corp., 588 F.2d 551, 558 (6th Cir. 1978).  The Court of Appeas has further noted that, in addition to these criteria, "Rule 803(8)(C) is to be applied in a commonsense manner, subject to the district court's sound exercise of discretion in determining whether the hearsay document has sufficient independent indicia of reliability to justify its admission."  Miller v. Caterpillar Tractor Co., 697 F.2d 141, 144 (6th Cir. 1983)(internal quotation marks and citation omitted).

There is no dispute that the investigation was timely.  The incident occurred on November 27, 2006, and Mr. Haynes began the investigation four days later.  On December 4, 2006, Mr. Haynes began interviewing the various juvenile corrections officers involved in the incidents as well as defendant Lindamood.  These interviews continued on December 7 and December 12.  On January 19, 2007, Mr. Haynes interviewed the last two juvenile corrections officers.  He submitted his Report of Investigation to his supervisor, Don Whipple, on January 22, 2007.  There is nothing in the record which indicates Mr. Haynes' skill level or experience other than the report itself, but it seems to be thorough.  There is also nothing in the record which suggests any bias on the part of Mr. Haynes.  No hearing was conducted, but "a formal hearing is not necessary when other indicia of trustworthiness are present."  Chavez v. Carranza, 559 F.3d 486, 496 (6th Cir. 2009).  Applying a common-sense approach to the report and the attached documentation, the Court finds sufficient independent indicia of reliability to justify its admission.  Because this report meets the requirements of the public records exception to the hearsay rule and because the defendants have not shown that it is untrustworthy, the Court concludes that the Report of Investigation is excluded from the hearsay rule pursuant to Fed.R.Evid. 803(8)(C).  Additionally, any statements

in the report made by any of the defendants are not hearsay
because they are party admissions and therefore admissible under
Fed.R.Evid. 801(d)(2).  The remaining question is whether these
exhibits have been properly authenticated.

Rule 901 of the Federal Rules of Evidence provides in
relevant part that "[t]he requirement of authentication or
identification as a condition precedent to admissibility is
satisfied by evidence sufficient to support a finding that the
matter in question is what the proponent claims."  Fed.R.Evid.
901(a).  The burden of proof for authentication is slight.  <u>See</u>
<u>Lexington Ins. Co. v. Western Pennsylvania Hosp.</u>, 423 F.3d 318,
328 (3d Cir. 2005).

The defendants assert that documents offered in support of
or in opposition to a motion for summary judgment must be
accompanied by an affidavit that identifies and authenticates
each document.  The primary case they rely on for this
proposition, however, involves the business record exception to
the hearsay rule which requires the testimony of a custodian or
other qualified witness.  <u>See</u> <u>AT&T Corp. v. Overdrive, Inc.</u>, 2006
WL 3392746 at *3 (N.D. Ohio Nov. 26, 2006)(construing Fed.R.Evid.
803(6)).  Unlike a business record, a public record or report, to
be excepted from hearsay, does not require such testimony.  <u>See</u>
Fed.R.Evid. 803(8).  Therefore, an affidavit is not strictly
necessary to lay a foundation for the admission of a public
report.  For example, domestic public documents under seal are
self-authenticating, as are certified copies of public records.
<u>See</u> Fed.R.Evid. 902(1),(4); <u>see</u> <u>also</u> Fed.R.Civ.P. 44(a)
(outlining procedure for proving an official record that is
otherwise admissible).

In this case, Mr. Gregg has not submitted the Report of
Investigation under seal, nor did he submit a certified copy of
this report.  Under similar circumstances, at least one court has

excluded an investigative report for lack of authentication.  <u>See</u>
<u>Smith v. HCA Inc.</u>, 183 Fed. App'x 854, 855 (11th Cir. 2006).
There are, however, other methods of authenticating a document.
For example, a document may be authenticated by its appearance,
contents, substance, and other distinctive characteristics.  <u>See</u>
Fed.R.Evid. 901(b)(4).  The proponent of the document may also
present evidence that a purported public record is from the
public office where such records are kept.  <u>See</u> Fed.R.Evid.
901(b)(7).

In this case, the Report of Investigation bears the
letterhead and a facsimile of the seal of ODYS.  It also bears
facsimiles of the signatures of the investigator and his
supervisor.  The contents and substance of the report also
support a finding that the report is what it is purported to be.
Both defendants Rogers and Slusher recalled in their depositions
being interviewed by Mr. Haynes shortly after the events in
question, and the reports contains summaries of their statements
at that time.  These circumstances make it unlikely that the
report was prepared by an entity other than ODYS.  <u>See</u> <u>Dwyer v.</u>
<u>Internal Revenue Service (In Re Dwyer)</u>, Nos. 2-92-0328, 2-92-
00575, 1992 WL 547730 at *2 (Bankr. S.D. Ohio Dec. 4, 1992)(J.
Cole).

The fact that the defendants produced the Report of
Investigation, the ODYS Standard Operation Procedure entitled
"Response to Resistant Youth Behavior," and Mr. Lindamood's
personnel file also make it more likely than not that these
records came from ODYS.  Courts have held that where a document
is produced in discovery, there may be sufficient circumstantial
evidence to support its authenticity.  <u>See</u> <u>Denison v. Swaco</u>
<u>Geolograph Co.</u>, 941 F.2d 1416, 1423 (10th Cir. 1991); <u>see</u> <u>also</u>
<u>Anand V. BP West Coast Products LLC</u>, 484 F.Supp.2d 1086, 1092
n.11 (C.D. Cal. 2007)(documents produced in response to discovery

requests admissible on summary judgment motion as self-authenticating); <u>Architectural Iron Workers Local No. 63 Welfare Fund v. United Contractors, Inc.</u>, 46 F.Supp.2d 769, 772 (N.D. Ill. 1999)(same).  Under these circumstances, the Court will consider the documents to be authentic.  <u>See</u> <u>Churches of Christ in Christian Union v. Evangelical Ben. Trust</u>, 2009 WL 2146095, *6 (S.D. Ohio Jul. 15, 2009).

## IV.  <u>The Summary Judgment Standard</u>

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute.  It may be rendered only when appropriate evidentiary materials, as described in Fed.R.Civ.P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. <u>Poller v. Columbia Broadcasting Systems, Inc.</u>, 368 U.S. 464 (1962).  The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970).  Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654 (1962).  The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).  Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which

it believes demonstrate the absence of a genuine issue of material fact," <u>Celotex</u>, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion.

## V.  <u>Legal Analysis</u>

The second amended complaint sets forth four claims for relief.  Count one pleads a claim of excessive and unnecessary use of force against defendants Rogers and Lawson.  Count two asserts a "failure to intervene" claim against defendants Derifield, Slusher, Crank, and Barnard.  Count three charges defendant Lindamood with condoning and knowingly acquiescing in the unlawful acts of defendants Rogers and Lawson.  In Count four, Mr. Gregg claims that by failing properly to train defendants Rogers, Slusher, Derifield, Lawson, Crank, and Barnard and by entrusting Mr. Gregg to their care despite the history and culture of violence at ORVJCF, defendants Nelson and Stickrath deprived him of his constitutional right to be free from unjustified infliction of bodily harm.

The defendants have moved for summary judgment on each of these counts, as well as an additional §1983 claim and three state-law claims.  This additional federal claim is based on the alleged removal of Mr. Gregg's name from the list of juveniles asking to speak to a Legal Assistance Program attorney.  The claims arising under Ohio law include assault, negligent entrustment, and negligent training.  In his memorandum <u>contra</u>, Mr. Gregg voluntarily relinquishes all four claims, and they do not appear in his second amended complaint.  Accordingly, the defendants' motion for summary judgment as it relates to those claims is moot.

## A.  <u>Claim One</u>

The defendants first argue that there is no evidence that any of the defendants used excessive force against Mr. Gregg.

13

The second amended complaint makes clear that Mr. Gregg is no longer claiming that Officer Slusher physically assaulted him. Consequently, the Court will consider whether a jury could find that Officers Rogers and Lawson used excessive force against Mr. Gregg.

There is some question about which provision of the Constitution applies to this claim. A prisoner's post-conviction excessive force claim must be raised "exclusively under the Eighth Amendment's cruel and unusual punishment clause." <u>Combs</u>, 315 F.3d at 556 (quoting <u>Pelfrey v. Chambers</u>, 43 F.3d 1034, 1036-37 (6th Cir. 1995)). On the other hand, "[d]ue process requires that a pretrial detainee not be punished." <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 (1979).

Mr. Gregg was presumably committed to the custody of ODYS after being adjudicated delinquent as the result of having committed an act that, if committed by an adult, would constitute a felony. <u>See</u> <u>J.P. v. Taft</u>, 439 F.Supp.2d 793, 796 n.3 (S.D. Ohio 2006). His status falls somewhere in between an adult prisoner and a pretrial detainee. <u>Compare</u> <u>Nelson v. Heyne</u>, 491 F.2d 352, 354-55 (7th Cir. 1974)(applying Eighth Amendment analysis to supervised beatings in juvenile reformatory) with <u>K.M. v. Alabama Dept. Of Youth Services</u>, 360 F.Supp.2d 1253, 1258-59 (M.D. Ala. 2005)(juvenile detainee's right to bodily integrity properly analyzed under due process clause of Fourteenth Amendment) and <u>Jackson v. Johnson</u>, 118 F.Supp.2d 278, 287 (N.D.N.Y. 2000)(Eighth Amendment ban on cruel and unusual punishment inapplicable where plaintiff was placed in state custody following adjudication as juvenile delinquent). However, it is not really necessary to choose between these standards given their similarity in application. The standard for analyzing excessive force claims under the Eighth Amendment was enunciated by the Supreme Court in <u>Hudson v. McMillian</u>, 503 U.S.

14

1 (1992).  Both the Second Circuit and the Fourth Circuit have applied the Hudson analysis to excessive force claims brought by pretrial detainees under the Fourteenth Amendment.  See United States v. Walsh, 194 F.3d 37, 48 (2d Cir. 1999); Riley v. Dorton, 115 F.3d 1159, 1166 (4th Cir. 1997).  Although recognizing that "there is room for debate over whether the Due Process Clause grants pretrial detainees more protections than the Eighth Amendment does," the Sixth Circuit has determined that "under either constitutional guarantee, an excessive force claimant must show something more than de minimis force."  Leary v. Livingston County, 528 F.3d 438, 443 (6th Cir. 2008).  Given the relatively similar analysis found in Walsh, Riley, and Leary, and the fact that the parties have not argued for a different standard, the Court will consider the actions of defendants Rogers and Lawson under the criteria set forth in Hudson.

> [W]henever prison officials stand accused of using
> excessive physical force in violation of the Cruel
> and Unusual Punishments Clause, the core judicial
> inquiry is whether force was applied in a good-
> faith effort to maintain or restore discipline, or
> maliciously and sadistically to cause harm.

Hudson, 503 U.S. at 7.

The maintenance or restoration of discipline at a correctional facility may require that prisoners be subjected to physical contact that at common law might constitute assault. Combs, 315 F.3d at 556.  The unnecessary and wanton infliction of pain upon an inmate, however, violates the Eighth Amendment.  Id. To determine whether the use of force was wanton and unnecessary, courts should consider the extent of the injury, as well as the need to apply force, the amount of force used, the relationship between the need for force and the amount used, the threat as perceived by the officer, and any attempts to moderate the severity of the response to such threat.  Hudson, 503 U.S. at 7;

Combs, 315 F.3d at 556-57.

Officer Rogers acknowledges using physical force against Mr. Gregg. However, he contends that the force used was only enough to restore order and get Mr. Gregg back in line. He also maintains that the hematoma sustained by Mr. Gregg is not conclusive evidence of the excessive use of force, and that it is not unusual for a youth who resists a permissible level of force to suffer a minor injury.

Mr. Gregg presents a different version of the nature and level of force used. He testified at his deposition that defendant Rogers punched him in the neck, grabbed him by the shirt and the head and threw him to the floor, and began hitting him and kneeing him in the face. The investigator determined that defendant Rogers did more than simply place Mr. Gregg in a C-Grip (an approved technique used to obtain compliance) before falling on the ground, which is what Officer Rogers claims to have happened. The report also concluded that Mr. Gregg's injuries were not consistent with falling down and hitting his head on a flat surface, but were more consistent with a punch and/or strike to the face - that is, with Mr. Gregg's version of events.

Based on his own testimony and the Report of Investigation, Mr. Gregg has "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). Consequently, there is a genuine issue as to whether Officer Rogers' use of force was not a good-faith effort to restore discipline or was applied maliciously and sadistically with the intent to cause harm. Defendant Rogers, on the other hand, has not "show[n] that there are no genuine issues of material fact and that [he] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Further, the blows directed at Mr. Gregg, which resulted in a hematoma, concrete burns on both sides of his face, and a large bump on top of his left

eyebrow, are not <u>de</u> <u>minimis</u> for Eighth Amendment purposes.  <u>See</u>
<u>Hudson</u>, 503 U.S. at 10 (bruises, swelling, loosened teeth, and a
cracked dental plate not <u>de</u> <u>minimis</u>); <u>see</u> <u>also</u> <u>McHenry v.</u>
<u>Chadwick</u>, 896 F.2d 184, 187 (6th Cir. 1990)(inmate raising Eighth
Amendment claim need not prove that he suffered serious physical
injury).  Accordingly, Officer Rogers' motion for summary
judgment on the excessive use of force claim must be denied.

Officer Lawson denies that he used any force against Mr.
Gregg.  That contention is supported by an affidavit from another
juvenile corrections officer, Officer Barnard, who was present
while Mr. Gregg was being escorted back to his unit.  However,
Mr. Gregg has sworn that on the way back to the unit defendant
Officer Lawson lifted him up by the neck and threw him to the
ground.  Officer Lawson did tell the investigator that while Mr.
Gregg was being escorted, he fell to the ground on his own.  The
Report of Investigation concludes that the red marks observed on
Mr. Gregg's neck by the medical staff less than thirty minutes
later were consistent with Mr. Gregg's version of events.  Again,
both Mr. Gregg's testimony and the Report of Investigation
demonstrate that there is a genuine issue for trial.  Lifting a
youth already in handcuffs and throwing him to the ground without
any justification for doing so could be construed to be excessive
and unnecessary force.  Accordingly, his motion for summary
judgment must be denied.

### B.  <u>Claim Two</u>

Defendants Crank, Derifield, and Barnard contend that Mr.
Gregg has not come forward with any evidence to support his claim
that they failed to protect him.  Although Officer Slusher
understandably did not join in this particular argument, the
second amended complaint sets forth a similar failure to protect
claim against him.  Therefore, the Court will also consider
whether there are genuine issues of material fact concerning that

claim.

The Court of Appeals has recognized since McHenry, supra, that a correctional officer who observes an unlawful beating may be liable under §1983 notwithstanding the fact that he or she did not actively participate in the assault. McHenry, 896 F.2d at 188 (applying the holding in Bruner v. Dunaway, 684 F.2d 422, 426 (6th Cir. 1982), involving police officers, to the prison context). In McHenry, only one of the prison guards was alleged to have played an active role in the plaintiff's beating, but the other corrections officers who were present were also found liable because they breached their duty to protect the plaintiff by failing to intervene. Id.

The parties agree that Officer Slusher was present during the alleged assault by Officer Rogers. Officer Slusher testified in his deposition that he saw Mr. Gregg approach Officer Rogers, that the two became involved in a verbal confrontation which became physical, and that he saw Officer Rogers on top of Mr. Gregg. From his perspective, Officer Rogers was trying to apply a technique to force Mr. Gregg to comply with his instructions, but Mr. Gregg was non-compliant and tried to push himself up in an effort to get away. At that point, Officer Derifield got involved, and Mr. Gregg was eventually handcuffed while on his back. There is no question that Officer Slusher failed to intervene in any way. The issue for summary judgment purposes is whether that failure may have violated Mr. Gregg's constitutional rights.

In his statement to Mr. Haynes, Officer Slusher said that although he saw the Mr. Gregg and Officer Rogers exchange words, he turned away for a moment, and when he turned back, Officer Rogers was on top of Mr. Gregg. Mr. Haynes concluded that Officer Slusher did see the entire incident and that he provided false and/or misleading statements when interviewed.

18

Officer Derifield testified that he was inside the clinic where medication was being distributed when the altercation began and that one or more youths told him that a fight was about to break out. He left the clinic and saw Officer Rogers trying to restrain Mr. Gregg. He then helped restrain Mr. Gregg by holding his feet. Officer Derifield told the investigator that he did not see anyone hit or punch Mr. Gregg. Because Mr. Haynes determined that Officer Rogers struck Mr. Gregg while the two were on the ground and because Officer Derifield had an unobstructed view of the incident, the Report of Investigation concluded that he gave false and/or misleading statements when interviewed.

Officer Barnard walked behind Officer Lawson the entire time Mr. Gregg was escorted back to his unit in handcuffs. In his declaration in support of summary judgment, he denies having seen Officer Lawson punch, kick, or in any way assault Mr. Gregg. He told the investigator that he had a clear recollection of the incident and that he saw nothing that would have caused Mr. Gregg to be taken to the ground. Because this statement contradicted Officer Lawson's claim that the Mr. Gregg fell to the ground by his own momentum, the Report of Investigation determined that Officer Barnard gave a false and/or misleading statement as well.

The Court concludes that Mr. Gregg has established a genuine issue as to whether Officers Slusher, Derifield, and Barnard breached their duty to protect Mr. Gregg from an unlawful assault. The Court has already found that a factual dispute exists about whether Officer Rogers' use of force was justified and about whether Officer Lawson threw Mr. Gregg to the ground. Because these other officers were present when these uses of force occurred and admittedly did not intervene in any way, that failure, coupled with the fact that they may have been untruthful about these incidents during the official investigation, are

sufficient evidence for a reasonable jury to return a verdict in favor of Mr. Gregg on Claim two.

The same cannot be said, however, about the failure to intervene claim leveled against Officer Crank. Although Mr. Gregg has submitted evidence showing that Officer Crank may have been present at some point while Mr. Gregg was being escorted back to his unit, the investigator did not find that Officer Crank participated in either of the assaults or that he provided a false and/or misleading account of those incidents. Officer Crank did not recall either incident. Mr. Gregg's own testimony does not place him at the scene of either alleged assault. He is therefore entitled to summary judgment on this claim.

## C. Claim Three

In Claim three, Mr. Gregg asserts that Operations Manager Lindamood violated his rights by "condoning and knowlingly acquiescing in" the two alleged assaults. Mr. Lindamood argues that there is simply no evidence to support this claim. In response, Mr. Gregg notes that Mr. Lindamood's personnel file shows multiple criticisms of his use of authority over juvenile corrections officers, including statements that he did not properly discipline them and that such officers believed they could get away with inappropriate actions. Mr. Gregg also contends that none of the personnel files of the juvenile corrections officers involved indicate that defendant Lindamood took any disciplinary measures against them despite the findings of improper conduct made in the Report of Investigation. According to Mr. Gregg, the absence of any disciplinary reports in these files shows that Mr. Lindamood ratified their actions. However, these facts are insufficient to prove a constitutional violation on the part of a supervisory official who was not present when an alleged improper use of force occurred.

"At a minimum, a plaintiff must show that the official at

least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers" to establish supervisory liability under §1983. <u>Hays v. Jefferson County, Ky.</u>, 668 F.2d 869, 874 (6th Cir. 1982). There is just not enough evidence in this record from which a jury could conclude that, either with respect to these two incidents or with respect to the officers who allegedly assaulted Mr. Gregg, Mr. Lindamood's management policies had any relationship to what occurred. He is therefore entitled to summary judgment on this claim. <u>See</u> <u>Durham v. Nu'Man</u>, 97 F.3d, 862, 869-70 (6th Cir. 1996).

In his memorandum <u>contra</u>, Mr. Gregg also argues that there is a genuine issue of material fact as to whether Mr. Lindamood had an opportunity to intervene in the plaintiff's assault by JCO Rogers. The amended complaint, however, does not allege a failure to protect claim against defendant Lindamood, and there is no admissible evidence in the record supporting such a claim. Any statements made to the investigator by other residents at the facility placing him at the scene are inadmissible hearsay. Consequently, there is no basis for retaining Mr. Lindamood as a defendant.

D.  <u>Claim Four</u>

The fourth claim in the complaint alleges that Director Stickrath and Acting Superintendent Nelson can be held liable in this case as supervisors because they did not adequately train juvenile corrections officers about the lawful use of force and because they tolerated a "culture of use of excessive force at Ohio River Valley Juvenile Correctional Facility ...." In their summary judgment motion, these two defendants argue that the amended complaint fails to state a claim upon which relief can be granted because Mr. Gregg's claims are based solely on the theory of <u>respondeat</u> <u>superior</u>. In his <u>memorandum</u> <u>contra</u>, Mr. Gregg

asserts that his claims against these defendants for their alleged deliberate indifference is based not on <u>respondeat</u> <u>superior</u> but upon these two defendants' personal actions, namely (1) their failure to train the other defendants; (2) the abandonment of their personal supervisory duties by failing to ensure that the facility was fully staffed; and (3) their ratification of the other defendants' conduct.

Allegations of direct involvement in constitutional deprivations, rather than attempts to impose liability by virtue of the doctrine of <u>respondeat</u> <u>superior</u>, are necessary in order to hold an individual defendant liable under §1983. <u>Monell v.</u> <u>Department of Social Services</u>, 436 U.S. 658 (1978). Although there are other legal claims that can properly be asserted against a supervisor simply because someone under his or her supervision may have committed a legal wrong, liability for constitutional deprivations under 42 U.S.C. §1983 cannot rest on such a claim. Consequently, unless the plaintiff's complaint affirmatively pleads the personal involvement of a defendant in the allegedly unconstitutional action about which the plaintiff is complaining, the complaint fails to state a claim against that defendant and dismissal is warranted. <u>See also Bellamy v.</u> <u>Bradley</u>, 729 F.2d 416, 421 (6th Cir. 1984). This rule holds true even if the supervisor has actual knowledge of the constitutional violation as long as the supervisor did not actually participate in or encourage the wrongful behavior. <u>See Shehee v. Luttrell</u>, 199 F.3d 295, 300 (6th Cir. 1999) (prison officials cannot be held liable under §1983 for failing to respond to grievances which alert them of unconstitutional actions); <u>see also Stewart</u> <u>v. Taft</u>, 235 F.Supp.2d 763, 767 (N.D. Ohio 2002) ("supervisory liability under §1983 cannot attach where the allegation of liability is based upon a mere failure to act").

In general, a claim that officers were not properly trained is more appropriately attributed to the agency itself, and not to a supervisors in his or her individual capacity. <u>See Phillips v.</u>

Roane County, Tenn., 534 F.3d 531, 543-44 (6th Cir. 2008).  For
example, the Supreme Court has recognized that a systemic failure
to provide officers with adequate training as a custom or policy
may lead to municipal liability under §1983.  See City of Canton
v. Harris,489 U.S. 378, 385 (1989).  Here, the agency is not (and
cannot be) a defendant in this lawsuit.  Although a supervisor
may still be held liable in his or her individual capacity under
a failure-to-train theory, a §1983 plaintiff must identify a
specific action on the part of each individual supervisor to show
that he or she enacted a policy that restricted the training of
juvenile corrections officers in the areas of proper use of force
and the need to intervene in assaults by other staff members.
See Phillips, 534 F.3d at 544; Everson v. Leis, 556 F.3d 484, 495
(6th Cir. 2009).

In this case, Mr. Gregg essentially argues that because the
juvenile corrections officers either assaulted him or failed to
intervene, their training was improper and inadequate.  This type
of allegation is clearly insufficient to support a failure-to-
train claim made against a supervisor.  See id.  Accordingly, Mr.
Gregg's failure-to-train claim against defendants Stickrath and
Nelson in their individual capacities cannot survive summary
judgment.

Mr. Gregg's claim that these defendants were deliberately
indifferent when they failed to ensure that ORVJCF was fully
staffed also fails.  There is no allegation that either of them
had a specific responsibility to ensure full staffing at this
facility or that the failure to perform this function directly
resulted in a violation of the plaintiff's constitutional rights.
Cf. Hill v. Marshall, 962 F.2d 1209, 1213 (6th Cir.
1992)(supervisory defendant liable where he abandoned his
specific duty to review inmates' complaints regarding medical
needs).  Mr. Gregg surmises that because Officer Rogers was

23

working a double shift on November 27, 2006, he may have been in a bad mood which may have contributed to his improper use of force. Mr. Gregg similarly speculates that the cumulative effect of an understaffed institution, mandatory double shifts, and allowing inexperienced officers to be paired together may have contributed to both assaults. While courts are required to draw every reasonable inference in favor of the party opposing summary judgment, they are not permitted to stack inference upon inference to preserve an issue for the jury. See <u>Taylor v. Michigan Dept. Of Corrections</u>, 69 F.3d 76, 86 n.2 (6th Cir. 1995) (Wellford, J., dissenting).

The claim that defendants Stickrath and Nelson ratified the officers' unconstitutional actions likewise must fail. Mr. Gregg bases this claim on the absence of any disciplinary reports relating to these incidents in the officers' personnel files. For the same reasons that Mr. Lindamood is entitled to summary judgment on this claim, defendants Stickrath and Nelson are entitled to judgment as well.

### E.  <u>Qualified Immunity</u>

Of course, a finding that a reasonable jury could conclude that a plaintiff's constitutional rights were violated by state officials is not sufficient to defeat a summary judgment motion. Because most public officials are entitled to either absolute or qualified immunity for their official acts, the Court must also determine if one of these immunities prevents the case from going to trial. Here, all of the defendants assert that even if Mr. Gregg may be able to prove a constitutional violation, they are entitled to qualified immunity.

Public officials sued under 42 U.S.C. §1983 in their individual capacities may raise "qualified immunity" as a defense to the suit. That defense has been explained as follows:

> "[G]overnment officials performing discretionary
> functions, generally are shielded from liability for

> civil damages insofar as their conduct does not violate
> clearly established constitutional or statutory rights
> of which a reasonable person would have known."

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Conversely, "if the law was clearly established, the immunity defense should fail, since a reasonably competent public official should know the law governing his conduct." Id. at 818-19.

As explained in Dominique v. Telb, 831 F.2d 673 (6th Cir. 1987), when the defense of qualified immunity is raised, a plaintiff must include in the pleadings factual allegations necessary to support the conclusion that the defendants violated clearly established law. When the defense is raised by motion, "the District Court must decide the purely legal question of whether the law at the time of the alleged action was clearly established in favor of the plaintiff." Id. The Court's decision on this issue should indicate the law as the Court perceives it and the basis for its conclusion that the constitutional rights at issue were clearly established.

In order for a constitutional right to be clearly established, it is necessary that a decision of the Supreme Court, the highest Court of the state, or a Court of Appeals announce the constitutional principle. See Robinson v. Bibb, 840 F.2d 349 (6th Cir. 1988). A single, idiosyncratic decision from one Court of Appeals is not sufficient to establish clearly a constitutional right. Davis v. Holly, 835 F.2d 1175 (6th Cir. 1987).

> "Although official action is not necessarily
> protected by qualified immunity unless and until the
> very action in question has been held unlawful...an
> official is not bound to anticipate correctly possible
> future extensions of the law if the question of law was
> open at the time he acted." Garvie v. Jackson,
> 845 F.2d 647, 652 (6th Cir. 1988).

Ordinarily, the Court must undertake a three-step analysis in determining whether qualified immunity applies. First, the

25

Court should identify the specific constitutional right that the defendant or defendants allegedly violated.  Second, the Court should determine whether, viewing the facts most favorably to the plaintiff, a violation of that right has been established. Finally, the Court should decide whether a reasonable state official would have known, at the time the action occurred and in light of the "clearly established law," that the plaintiff's constitutional rights had been violated.  If so, qualified immunity is unavailable.  See Dickerson v. McClellan, 101 F.3d 1151, 1157 (6th Cir. 1996).

Because the Court has determined as a matter of law that, based on this record, there is no genuine factual dispute about whether defendants Crank, Lindamood, Stickrath, and Nelson violated Mr. Gregg's constitutional rights, it is unnecessary to reach the "clearly established" prong of qualified immunity as to these defendants.  See Bukowski v. City of Akron, 326 F.3d 702, 708 (6th Cir. 2003).  Thus, this is an issue only with respect to the claims against Officers Rogers, Lawson, Slusher, Derifield and Barnard.

The Court has determined that there is a triable issue as to whether the actions of all of these defendants constituted either the use of excessive force, or constituted a failure to intervene in order to protect Mr. Gregg from the use of excessive force. The contours of the right to be free from the use of excessive force in the prison setting were clearly established no later than 1992 when the Supreme Court decided Hudson.  Therefore, juvenile corrections officers such as Officers Rogers and Lawson should reasonably have known that inflicting unnecessary and wanton pain on Mr. Gregg, assuming the jury finds his version of the facts to be true, would violate his constitutional right to be free from cruel and unusual punishment.  Accordingly, those defendants are not entitled to qualified immunity at this stage

of the proceedings.

The Court has also determined that, on this record and in light of the conflicting statements of Mr. Gregg and the officers, a reasonable jury could find that Officers Slusher, Derifield and Barnard breached their duty to protect Mr. Gregg from physical assaults by Officers Rogers and Lawson. The Court of Appeals has recognized since its decision in <u>McHenry</u> in 1990 that a correctional officer who observes an unlawful beating and fails to intervene may be liable under §1983 notwithstanding the fact that he or she did not actively participate in the assault. Therefore, by November, 2006, these officers should reasonably have been aware that they had a duty to protect a juvenile detainee from physical assaults by other juvenile corrections officers. <u>See</u> <u>Durham</u>, 97 F.3d at 868 (denying qualified immunity to nurse and hospital security officer who stood idly by while plaintiff was attacked). Thus, they are not entitled to qualified immunity.

F.   <u>Eleventh Amendment Immunity</u>

The last argument raised in the summary judgment motion is that the Eleventh Amendment bars all official capacity claims asserted here. Mr. Gregg responds that to the extent he is seeking prospective injunctive relief against the defendants in their official capacities, the Eleventh Amendment is inapplicable. The only claim for injunctive relief which he asserts is for the removal of all adverse reports in his institutional file that are related to the incidents that occurred on November 27, 2006.

This claim fails both for lack of pleading and lack of proof. The amended complaint does not allege that any of the defendants caused adverse reports concerning the November 27, 2006 incidents to be placed in his institutional file, much less that such an action violated his constitutional rights. There is

similarly no evidence on this issue from which the Court could find a constitutional violation.  It is therefore unnecessary to reach the Eleventh Amendment argument.

VI.  <u>Disposition</u>

For the foregoing reasons, the Court grants Mr. Gregg's motion for leave to amend his complaint (#54) and denies the defendants' motion <u>in</u> <u>limine</u> to bar inadmissible evidence (#60). The defendants' motion for summary judgment (#48) is granted in part and denied in part consistent with this opinion and order. All official capacity claims for injunctive relief, and all claims against defendants Thomas Stickrath, Fred Nelson, Robert Lindamood, and Randall Crank are dismissed.  The remaining claims will be tried on the scheduled trial date of November 2, 2009.

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge